[Crim. No. 3506. Second Dist., Div. Two. Nov. 25, 1941.]

THE PEOPLE, Respondent, v. FRANKLIN SEWART CALKINS, Appellant.

34

E. V. McPherson and Mrs. Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

WOOD (W. J.), J.—Defendant was convicted at a jury trial on the charge of contributing to the delinquency of a minor. He has appealed from the order denying his motion for a new trial.

It is charged in the information that defendant "did willfully and unlawfully allow and assist one Betty Bradrick to remain away from home and hide from her family for a period of several months, by living at the home of said defendant, Franklin Sewart Calkins, and the said Betty Bradrick went under the name of Calkins and posed as the stepsister of the said Franklin Sewart Calkins, and the said Franklin Sewart Calkins did deny to the brothers of the said Betty Bradrick that he knew where Betty Bradrick was, when in fact the said Franklin Sewart Calkins had knowledge of the whereabouts of Betty Bradrick at all times; the said Betty Bradrick being a minor of the age of fifteen years and not being in any way related to the said Franklin Sewart Calkins." It is further charged that these acts of defendant "did thereby then and there manifestly tend to and did encourage, cause and contribute to the said Betty Bradrick becoming and remaining such a person as is described in section 700 of the Juvenile Court Law, to-wit, a person under twenty-one years of age who is leading, or is in danger, from any cause, of leading an idle, lewd, dissolute and immoral life."

It is contended by defendant that the evidence is insufficient to support the conviction. From the evidence presented by the prosecution it appears that Betty Bradrick, a girl 15 years of age, had been living with her mother and older brothers. In June of 1940 she left their home and went to the cottage of defendant, who was then 35 years of age, in a bungalow court at 1720 Lemon Street, Alhambra. She stated that she wanted to leave home and that she had long been in love with defendant, who intended to marry her. Defendant told her to return home but she refused to do so and for about six weeks she lived at defendant's cottage. There were three rooms in the cottage, a living room, kitchen and bed room. Betty did not let her relatives know where she was during the period she stayed with defendant. A man named Wallace lived in the same cottage with defendant and Betty during two weeks of the period in which Betty resided with defendant. Wallace stated that during part of this time he slept in the living room and Betty and defendant slept in the bed room, the door of the bed room being closed. Betty assumed the name of Betty Calkins and defendant told Wallace that she was his step-sister. While she was living in defendant's house Betty did the cooking and house cleaning. After about six weeks she left to seek work elsewhere and was ''picked-up'' after she had been away from her home for about eight months. During this time a police officer and Betty's brother tried to learn of Betty's whereabouts but defendant told them that he did not know her whereabouts.

By section 550 of the Welfare and Institutions Code, chapter 2 of the code is designated as the ''Juvenile Court Law.'' Section 700 of the code provides: ''The jurisdiction of the juvenile court extends to any person under the age of twenty-one years who comes within any of the following descriptions: . . . (k) Who is leading, or from any cause is in danger of leading, an idle, dissolute, lewd, or immoral life.'' In section 702 of the code it is provided: ''Any person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of twenty-one years to come within the provisions of any of the subdivisions of section 700 or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or per-

suasion, induces or endeavors to induce any person under the age of twenty-one years to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause any such person to become or to remain a person within the provisions of any of the subdivisions of section 700, is guilty of a misdemeanor. . . . ''

 The main purpose of the Juvenile Court Law is to prevent the delinquency of children. By this law acts or omissions which tend to cause minors to become delinquent are made criminal. It is the purpose of the statute to safeguard children from those influences which would tend to cause them to become delinquent. It is not necessary for the prosecutor to establish that defendant's acts or omissions resulted in the minor's actual entry upon an idle or immoral course of conduct. The prosecutor establishes his case when he proves acts or omissions on the part of the defendant which tend to cause or encourage the minor to lead an idle, dissolute, lewd or immoral life. (*People* v. *McDougal,* 74 Cal. App. 666 [241 Pac. 598]; *People* v. *De Leon,* 35 Cal. App. 467 [170 Pac. 173].)

 The question whether the acts established by the prosecution were such as are branded as criminal by section 702 of the code was primarily for the determination of the jury and a reviewing court may not interfere with the verdict adverse to the defendant if the jury could reasonably conclude from the evidence that the defendant was guilty. (*People* v. *McDougal, supra.*) We are satisfied that the evidence in the present case is sufficient to support the jury's verdict.

 Defendant also contends that the prosecuting attorney was guilty of prejudicial misconduct and cites the following statements of the prosecutor in his argument to the jury: ''Counsel has indicated that I, in referring to the child being in the room with the man would be to say that a man in a room with a woman is doing an immoral act. No, we are not inferring that, but we do know for a man to be in a room with a strange child who is not of an age to protect herself requires provision to see that that child is not in that room with him alone. . . . Why there was a duty on that man's part as a citizen of this county to have immediately taken the necessary steps to safeguard the name and reputation of that little girl, that there should not even be any

suspicion that could be cast in that direction. . . . If we are to take the testimony of that little girl herself that she remained in that home for five or six weeks, where else could that little girl have slept but in the room of the defendant? I submit to you that that alone is sufficient to satisfy the mind of any one that the acts of this defendant were not those of a gentleman toward a child.'' Defendant argues that the only inference to be gathered from the statements of the prosecutor is that he was placing upon the defendant the legal duty to safeguard the name and reputation of the minor or he would be answerable. When all of the circumstances shown in evidence are taken into consideration, it must be held that the remarks of the prosecutor are within the limits of legitimate argument. We find no misconduct therein.

The order is affirmed.

Moore, P. J., and McComb, J., concurred.